UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LEONIDAS LUCIEN,

                              Plaintiff,

        v.

EMILY WILLIAMS, ACTING
SUPERINTENDENT, FISHKILL
CORRECTIONAL FACILITY, *et al.*,

                              Defendants.

No. 20-CV-8020 (KMK)

OPINION & ORDER

Appearances:

Leonidas Lucien
Elmont, NY
*Pro Se Plaintiff*

Bahiya Lawrence, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

        Pro se Plaintiff Leonidas Lucien ("Plaintiff") brings this Complaint, pursuant to 42

U.S.C. § 1983, against Fishkill Correctional Facility Acting Superintendent Emily Williams

("Williams"), and Offender Rehabilitation Coordinator Beverly Lockwood ("Lockwood")

(collectively, "Defendants").  (Compl. (Dkt. No. 1); First Am. Pet. ("FAP") 1 (Dkt. No. 12).)[1]

---

[1] Defendant also initially sued three John Doe Defendants, (Compl. ¶ 11.)  Plaintiff identified two of the Doe Defendants as Department of Correction & Community Supervision ("DOCCS") Deputy Commissioner Anne Marie McGrath ("McGrath") and Parole Officer Royce ("Royce").  (FAP 1.)  However, Plaintiff has not served either of these Defendants, and they have not appeared in this Action.  (*See* Dkt.)
        Plaintiff's "First Amended Petition" does not amend his Complaint, but instead identifies the Doe Defendants referenced above and then includes additional facts and legal arguments.

Before the Court is Defendants' Motion To Dismiss pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure (the "Motion").  (*See* Not. of Mot. (Dkt. No. 29).)  For the reasons

discussed below, the Motion is granted.

## I.  Background

### A.  Materials Considered

As a threshold matter, the Court must determine the proper treatment of exhibits attached

to the Declarations of Shawn Oliver ("Oliver Declaration") and Bahiya Lawrence ("Lawrence

Declaration").  (*See* Decl. of Shawn Oliver ("Oliver Decl.") (Dkt. No. 23-2); Decl. of Bahiya

Lawrence, Esq. ("Lawrence Decl.") (Dkt. No. 23-4).)  Generally, "[w]hen considering a motion

to dismiss, the Court's review is confined to the pleadings themselves," because "[t]o go beyond

the allegations in the [c]omplaint would convert the Rule 12(b)(6) motion to dismiss into one for

summary judgment pursuant to [Rule] 56."  *Thomas v. Westchester Cnty. Health Care Corp.*,

232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002) (citation omitted).  However, "the Court's

consideration of documents attached to, or incorporated by reference in the [c]omplaint, and

matters of which judicial notice may be taken, would not convert the motion to dismiss into one

for summary judgment."  *Id.* (citations omitted); *see also Bellin v. Zucker*, 6 F.4th 463, 473 (2d

Cir. 2021) (explaining that "when ruling on a Rule 12(b)(6) motion to dismiss," courts may

"consider the complaint in its entirety . . . , documents incorporated into the complaint by

reference, and matters of which a court may take judicial notice" (quotation marks omitted)); *Hu*

---

(*See generally* FAP.)  Although "an amended complaint ordinarily supersedes the original and
renders it of no legal effect," *Arce v. Walker*, 139 F.3d 329, 332 n.4 (2d Cir. 1998) (quoting *Int'l
Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)), "[g]iven Plaintiff's pro se status . . .
the Court will consider both the [First] Amended [Petition] and [ ] Complaint together, *Guy v.
MTA N.Y.C. Transit*, 403 F. Supp. 3d 131, 133 (E.D.N.Y. 2017) (considering the pro se
plaintiff's third amended complaint and first amended complaint together where the third
amended complaint omitted facts pled in the first amended complaint).

*v. City of N.Y.*, 927 F.3d 81, 88 (2d Cir. 2019) ("In deciding a Rule 12(b)(6) motion, the court may consider 'only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which judicial notice may be taken." (alteration omitted) (quoting *Samuels v. Air Transp. Loc. 504*, 992 F.2d 12, 15 (2d Cir. 1993))).

"Moreover, 'where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint.'" *Alvarez v. County of Orange*, 95 F. Supp. 3d 385, 394 (S.D.N.Y. 2015) (alteration omitted) (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)).  As the Second Circuit has reiterated, "a plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (emphasis omitted).

The Court finds that Plaintiff's Certificates of Release to Post-Release Supervision ( "PRS Certificate") and to Parole Supervision ("Parole Certificate"), attached as Exhibit A to the Oliver Declaration (*See* Oliver Decl. Ex. A ("PRS & Parole Certificates") (Dkt. No. 23-3)), are integral to Plaintiff's Complaint because Plaintiff is clearly aware of their terms and effect and, in fact, argues in his Complaint that he remains imprisoned beyond the completion of his court-imposed sentence,  (*see* Compl. ¶ 15).  *See Garcia v. Falk*, No. 09-CV-2045, 2011 WL 12688998, at *3 n.4 (E.D.N.Y. Mar. 11, 2011), *report and recommendation adopted as modified sub nom. Garcia v. Alk*, No. 09-CV-2045, 2015 WL 1469294 (E.D.N.Y. Mar. 30, 2015) (finding plaintiff's certificate of release was integral because "plaintiff relied on [it] in bringing this action and [it] [was] either in plaintiff's possession or plaintiff was aware of [it]."); *cf. Thompson v. Racette*, No. 11-CV-1372, 2012 WL 12884469, at *1 n.4 (N.D.N.Y. Aug. 2, 2012), *aff'd*, 519

3

F. App'x 32 (2d Cir. 2013) (considering plaintiff's DOCCS medical records, although "not attached to the [c]omplaint," because they were integral to plaintiff's claim that prison officials were deliberately indifferent to his medical needs).

The remaining exhibits attached to Oliver Declaration—(1) Plaintiff's New York Sex Offender Registration Form, (*see* Oliver Decl. Ex. B (Dkt. 23-3)), (2) Plaintiff's Parolee Chrono Report, (*see id.* Ex. C (Dkt. 23-3) , and (3) the Residential Address Inquiry results, (*see id.* Ex. D (Dkt. No. 23-3))—are not integral to Plaintiff's Complaint because he has not relied on either document's terms or effect in framing his Complaint. *Berkley v. City of New Rochelle*, No. 21-CV-578, 2022 WL 784018, at *3 (S.D.N.Y. Mar. 15, 2022) (holding documents not integral to complaint because plaintiff had not relied on them in her complaint).

Finally, although not integral to the Complaint, the Court may take judicial notice of the decision of the New York Appellate Division, Second Department in Plaintiff's state habeas corpus claim challenging his continued confinement. (*See* Lawrence Decl. Ex. A.) *See also Kamdem-Ouaffo v. Pepsico, Inc.*, 160 F. Supp. 3d 553, 562 n.11 (S.D.N.Y.), *aff'd*, 657 F. App'x 949 (Fed. Cir. 2016) (taking judicial notice of state court decision in deciding motion to dismiss).

B.  Factual Background

On August 5, 2015, Plaintiff was sentenced to four years in prison and five years of supervised release after being convicted of committing Rape in the Second Degree. (*See* PRS & Parole Certificates 2; Compl. ¶ 15.)  As part of his sentence, Plaintiff was also designated as a Level 1 Sex Offender under the New York State Sex Offender Registration Act ("SORA"), N.Y. Correct. Law § 168.  (Compl. ¶ 14.)[2]  On February 9, 2019, Plaintiff was released from

_____

[2] As another court in this District has explained, "SORA establishes three risk levels to which a sex offender may be classified, depending on the individual's risk of re-offending[;] . . . . [t]he higher the risk level, the greater the reporting and community notification requirements." *McDay v. Paterson*, No. 09-CV-500, 2010 WL 4456995, at *2 (S.D.N.Y. Nov. 1, 2010).

4

Woodbourne Correctional Facility ("Woodbourne") to begin his supervised release at Fishkill Residential Treatment Facility (the "RTF").  (PRS & Parole Certificates 2; Compl. ¶ 15.)  While residing at the RTF, Plaintiff was denied access to social media.  (Compl. ¶¶ 15, 20–21.) Plaintiff also asserts that "[D]efendants . . . practice[d] passive assistance [and] work[ed] at a snail[']s pace" in assisting him with finding housing.  (Compl. ¶ 28.)  Finally, Plaintiff alleges that Defendants have an "unwritten policy" or "travel ban restriction" that prisoners should be released to "their county of conviction or former residence," (FAP ¶ 6), and that this unwritten policy prevented him from being released to a SARA-compliant address in Albany, New York that housed other sex offenders, (*id.* ¶ 7).  Plaintiff was released from the RTF on March 1, 2022 to an apartment in Elmont, New York.  (*See* Letter from Leonidas Lucien to Court ("Residence Letter") 1 (Dkt. No. 27); Pl's Mem. of Law in Opp'n to Mot. To Dismiss ("Pl's Opp'n") 5 (Dkt. 33).)

Although Plaintiff does not provide this information in his Complaint, prior to his release, Plaintiff signed a Parole Certificate which included several provisions related to his status as a sex offender required by the Sexual Assault Reform Act ("SARA"), Executive Law § 259-c(14). (PRS & Parole Certificates 3–5.)  Specifically, Plaintiff was required to propose housing that was not within one thousand feet of a school.  (*Id* at 5.)  Plaintiff also agreed to a "Sex Offender Housing Condition" that required him to "propose a residence" that complied with requirements of SARA "to be investigated by [DOCCS] and [to] assist [DOCCS] in any efforts it may make on [his] behalf to develop a residence."  (*Id.*)  Further, Plaintiff agreed that he would "be transferred to and participate in the programs of a residential treatment facility . . . until such time as a residence [had] been approved and such address [had] been verified" to comply with SARA.  (*Id.*)

5

In his Complaint, Plaintiff requests "a preliminary injunction directing [D]efendants to refrain from retaliatory acts [for] pursuing this cause of action[,]" "a permanent injunction directing [D]efendants to provide Plaintiff documentary proof asserted in this action and . . . that reasonably will lead to discoverable admissible evidence in preparation for trial by jury," and $1,000,000 in compensatory damages.  (Compl. at 12.)[3]  Plaintiff has also requested "a preliminary injunction . . . absolving [McGrath] and [Royce's] travel-ban restriction[] and delivery of Plaintiff to Mr. Doug ClarK [sic]. . ."  (FAP ¶ 7.)

C.  Procedural History

Plaintiff filed his Complaint on September 25, 2020.  (See Compl.)  On September 29, 2020, then Chief Judge Colleen McMahon ("Judge McMahon") directed Plaintiff to pay his filing fees or file for in forma pauperis ("IFP") status.  (See Order Directing Payment of Fees or IFP Appl. and Prisoner Authorization (Dkt. No. 2).)  On October 15, 2020, Plaintiff filed his IFP Application and Prisoner Authorization forms.  (Dkt. Nos. 3, 4.)  On January 27, 2021, Judge McMahon authorized Plaintiff to proceed IFP.  (See Order Granting IFP Appl. (Dkt. No. 6).)  On June 17, 2021, the Court issued an Order of Service directing that the U.S. Marshals serve Defendants Williams and Lockwood, (see Order of Service (Dkt. No. 9)), and Defendants were served on December 7, 2021, (Dkt. Nos. 15, 16).  On July 8, 2021, Defendant filed his First Amended Petition (the "FAP").  (See FAP.)[4]  On July 29, 2021, the Court directed Defendants to

_____

[3] Plaintiff requests "delaration [sic] . . . relief" pursuant to 28 U.S.C. §§ 2201–2202. (Compl. ¶ 1.)  However, Plaintiff does not otherwise describe the declaratory relief he is seeking, so the Court will not address his request further.  See Workman v. City of Syracuse, No. 12-CV-382, 2015 WL 300435, at *1 (N.D.N.Y. Jan. 22, 2015) (finding complaint failed to state a cause of action for declaratory judgment where it did not include "a demand for a judicial declaration addressed to the constitutionality of any particular statute, ordinance, or regulation.")

[4] Plaintiff has also submitted a number of letters to the Court reiterating legal theories raised in his Complaint and FAP.  (See Dkt. Nos. 14, 20, 25, 26, 27.)

respond to Plaintiff's request in his FAP for a preliminary injunction.  (Order (Dkt. No. 13).)

After an extension request that the Court granted (*see* Dkt. Nos. 17, 18), Defendants filed their

Motion in Opposition to the Preliminary Injunction on January 28, 2022, (*see* Defs' Mem. of

Law in Opp'n to Pl's Mot. for a Prelim. Inj. ("Prelim. Inj. Opp'n") (Dkt. No. 23); Oliver Decl.;

Lawrence Decl.)  On the same day, Defendants submitted a pre-motion letter requesting to file a

motion to dismiss.  (*See* Letter from Bahiya Lawrence, Esq, to Court (January 28, 2022) (Dkt.

No. 22).)  The Court granted this request on March 8, 2022.  (*See* Dkt. No. 24.)  Defendants filed

their Motion To Dismiss on April 7, 2022.  (*See* Not. of Mot.; Mem. of Law in Supp. of Mot. To

Dismiss ("Defs' Mem.") (Dkt. No. 30).)  Plaintiff filed his Opposition on May 6, 2022.  (*See* Pl's

Opp'n.)  Defendants filed their reply on May 23, 2022.  (*See* Defs' Reply Mem. of Law in

Further Supp. of Mot. to Dismiss ("Defs' Reply") (Dkt. No. 34).)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of

[its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil

Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "Nor does a complaint

suffice if it tenders naked assertions devoid of further factual enhancement." *Id*. (alteration and

quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a

right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although "once a claim

has been stated adequately, it may be supported by showing any set of facts consistent with the

allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a

claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her]

claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see*

*also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief

will . . . be a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense.  But where the well-pleaded facts do not permit the court to infer

more than the mere possibility of misconduct, the complaint has alleged—but it has not

'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in

original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous

departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the

doors of discovery for a plaintiff armed with nothing more than conclusions.").

 "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the

factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and

"draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992

F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145

(2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must

confine its consideration to facts stated on the face of the complaint, in documents appended to

the complaint or incorporated in the complaint by reference, and to matters of which judicial

notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999)

(citation and quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317

(S.D.N.Y. 2016) (same).  However, when the complaint is from a pro se plaintiff, the Court may

consider "materials outside the complaint to the extent that they are consistent with the

allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4

n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a defendant's] request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), "documents either in [the plaintiff's] possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation marks omitted), and "[plaintiff's] opposition memorandum," *Gadson v. Goord*, No. 96-CV-7544, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [the plaintiff's] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (citation omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (citation and quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and citation omitted)).

B.  Analysis

1.  Personal Involvement

Defendants argue that Plaintiff has failed to adequately allege the personal involvement of the Defendants and as such his claims for damages against them in their individual capacities should be dismissed.  (Defs' Mem. 13–14; Defs' Reply 7.)[5]

---

[5] Plaintiff also brings suit against Defendants for damages in their official capacities, but it is well-established that monetary damages against DOCCS officials are barred by the doctrine

"It is well settled that, in order to establish a defendant's individual liability in a suit

brought under [42 U.S.C.] § 1983, a plaintiff must show . . . the defendant's personal

involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d

133, 138 (2d Cir. 2013); *see also Davila v. Johnson*, No. 15-CV-2665, 2015 WL 8968357, at *4

(S.D.N.Y. Dec. 15, 2015) ("It is well settled in this Circuit that personal involvement of

defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §

1983." (citation and quotation marks omitted)).

In *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020), the Second Circuit "held that

'there is no special rule for supervisory liability[,]' thereby doing away with 'the special

standards for supervisory liability' . . . and clarifying that 'a plaintiff must plead and prove that

each Government-official defendant, through the official's own individual actions, has violated

the Constitution.'" *Falls v. (Police Officer) Detective Michael Pitt*, No. 16-CV-8863, 2021 WL

1164185, at *32 (S.D.N.Y. Mar. 26, 2021) (internal quotation marks omitted) (quoting *Tangreti*,

983 F.3d at 617, 618).  Therefore, even with respect to supervisors, "a plaintiff must plead that

each Government-official defendant, through the official's own individual actions, has violated

the Constitution." *Iqbal*, 556 U.S. at 676.

Beyond naming Defendants in the caption of his Complaint, Plaintiff has provided only

conclusory allegations as to each of them.  For example, he alleges that Williams was "at all

times in this action . . . adequately apprised of, and on notice to Plaintiff's unlawful confinement

[and] acted adversely to [his] expectation of relief beyond his maximum term of imprisonment."

(Compl. ¶ 8.)  However, Plaintiff does not allege any specific actions Williams took that were, in

---

of sovereign immunity.  *See, e.g.*, *Scott v. Rosenberger*, No. 19-CV-1769, 2020 WL 4274226, at
*4 (S.D.N.Y. July 24, 2020) ("DOCCS officials enjoy Eleventh Amendment immunity from suit
under § 1983 for damages in their official capacities." (citation omitted)).

fact, adverse to his interests, nor does he allege that Williams was aware in any way of any actions taken by her subordinates that would have put her on notice of any violation of his rights. Merely alleging that a supervisory defendant is aware of an allegedly unlawful or unconstitutional condition is insufficient to establish personal involvement.  *See Luck v. Westchester Med. Ctr.*, No. 17-CV-9110, 2020 WL 564635, at *11 (S.D.N.Y. Feb. 4, 2020) ("[A]mple Second Circuit case law makes clear that a [p]laintiff does not state a claim where he alleges only that a supervisory official received reports of wrongdoing.") (citation, alteration, and quotation marks omitted).  Thus, Plaintiff has failed to adequately allege Williams' personal involvement in any violations of Plaintiff's rights.  *See Ortiz v. Bloomberg*, No. 10-CV-9434, 2011 WL 4822829, at *3 (S.D.N.Y. Oct. 7, 2011) (dismissing claims where "the only named reference to [certain correctional officers] [was] in the caption of the [c]omplaint, and the only additional references to these defendants [were] merely conclusory statements about their personal involvement and liability").

Plaintiff alleges Lockwood "failed to terminate unconstitutional practices and unlawfully abrogated Plaintiff's lawful confinement, and [was] directly instrumental [in] infringing on Plaintiff's liberty therefrom."  (Compl. ¶ 10.)  However, Plaintiff does not allege what any of the allegedly unconstitutional practices were that Lockwood failed to terminate, whether Lockwood in fact had power to terminate such practices, or how Lockwood acted to abrogate his lawful confinement.  Plaintiff has thus failed to allege Lockwood's personal involvement in any violation of his rights.  *See Ong v. Park Manor (Middletown Park) Rehab. & Healthcare Ctr.*, No. 12-CV-974, 2015 WL 5729969, at *32 (S.D.N.Y. Sept. 30, 2015) (finding no personal involvement where Plaintiff raised only "assertion[s] of liability without any explanation as to [the] defendants' role in harming Plaintiff").

Therefore, Plaintiff's claims for damages against Defendants Williams and Lockwood under § 1983 are dismissed.

### 2.  First Amendment Claim

Plaintiff alleges that Defendants have "failed to afford [him] access to social media . . . in violation of the First Amendment." (Compl. ¶ 15.)  Plaintiff argues that this failure to provide access runs afoul of the Supreme Court's holding in *Packingham v. North Carolina*, 137 S. Ct. 1730 (2017), that depriving registered sex offenders of the right to access social media violated the First Amendment. *Id.* at 1737. (*See also* Compl. ¶ 21.)  Defendants have not addressed this claim. (*See generally* Prelim. Inj. Opp'n; Defs' Mem.; Defs' Reply.)

The Second Circuit and courts within it have found that sex offenders on parole or supervised release have sufficiently stated a First Amendment claim where they allege that they are entirely prohibited from accessing social media. *See, e.g., U.S. v. Eaglin*, 913 F.3d 88, 97 (2d Cir. 2019) (relying on *Packingham* in holding that "total internet ban" included as condition of sex offender's supervised release was impermissible); *Yunus v. Robinson*, No. 17-CV-5839, 2019 WL 168544, at *16–17 (S.D.N.Y. Jan. 11, 2019) (finding that *Packingham* applied to blanket limitations included in plaintiff's parole conditions).  Because the Court must assume the truth of Defendant's allegations, the Court presumes that the alleged failure to provide access resulted in Plaintiff being completely unable to access social media and was not a condition of his supervised release and, as such, finds that Plaintiff has sufficiently stated a claim.[6]

---

[6] The Second Circuit, in a non-precedential opinion, has indicated that the holding in *Packingham* may be limited to situations where the ban on social media access is absolute and the sex offender is no longer on parole or supervised release. *See U.S. v. Savastio*, 777 F. App'x 4, 7 (2d Cir. 2019) (summary order).  At the same time, some courts in this District have found that an absolute ban imposed as a condition of parole or supervised release does violate the First Amendment. *See Yunus*, 2019 WL 168544, at *16–17.  Plaintiff would be well-advised to address both the scope of the ban and whether it was a condition of his supervised release in any future submissions to the Court.

However, because Plaintiff has failed to allege the personal involvement of the Defendants in the alleged violation (*see* § II.B.1 *supra*), Plaintiff's claim must be dismissed, *see Santiago v. Annucci*, No. 20-CV-4530, 2021 WL 4392487, at *5 (S.D.N.Y. Sept. 24, 2021) (dismissing due process claim on the "independent basis" that plaintiff had failed to adequately allege personal involvement of the defendants).

### 3.  Deliberate Indifference

Plaintiff also alleges Defendants held him past the expiration date of his sentence in violation of the Eighth Amendment.  (Compl. ¶¶ 1, 13–15, 28.)[7]

"The Eighth Amendment prohibits the infliction of cruel and unusual punishments on those convicted of crimes, including deprivations suffered during imprisonment, provided that they involve the unnecessary and wanton infliction of pain."  *Franza v. Stanford*, No. 16-CV-7635, 2018 WL 914782, at *12 (S.D.N.Y. Feb. 14, 2018) (ellipsis and quotation marks omitted) (quoting *Wilson v. Seiter*, 501 U.S. 294, 296–97 (1991)).  "A plaintiff asserting an Eighth Amendment claim pursuant to 42 U.S.C. § 1983 must meet two requirements[:] [f]irst, the alleged deprivation must be, in objective terms, sufficiently serious[;] [and] [s]econd, the charged official must act with a sufficiently culpable state of mind."  *Joseph v. Cuomo*, 2021 WL 200984, at *9 (quotation marks omitted) (quoting *Francis v. Fiacco*, 942 F.3d 126, 150 (2d Cir. 2019)).  "To satisfy the first requirement, a plaintiff must plead 'a harm of a magnitude that violates a person's [E]ighth [A]mendment rights.'"  *Hurd v. Fredenburgh*, 984 F.3d 1075, 1084 (2d Cir.), *cert. denied* 142 S. Ct. 109 (2021) (citing *Calhoun v. N.Y. State Div. of Parole Officers*,

---

[7] Defendants argue that Plaintiff has failed to state a claim based on the conditions of his confinement.  (*See* Defs' Mem. 7–8.)  However, the Court construes Plaintiff's Complaint to allege that the Eighth Amendment violation at issue is his continued confinement after he completed his court-imposed sentence.  (*See* Compl. ¶ 8.)

999 F.2d 647, 654 (2d Cir. 1993). In the context of unlawful incarceration, the Second Circuit has explained that "[t]here is no penological justification for incarceration beyond a mandatory release date [so] . . . unauthorized detention of just one day past an inmate's mandatory release date qualifies as a harm of constitutional magnitude." *Id.* at 1085. To demonstrate that an official is culpable, the extended incarceration "must . . . be the product of deliberate indifference." *Campbell v. Peters*, 256 F.3d 695, 700 (2d Cir. 2001); *see also Calhoun v. N.Y. State Div. of Parole Officers*, 999 F.2d 647, 654 (2d Cir. 1993) (same); *accord Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985) ("Detention beyond the termination of a sentence could constitute cruel and unusual punishment if it is the result of 'deliberate indifference' to the prisoner's liberty interest; otherwise, such detention can be held to be unconstitutional only if it violates due process." (citations omitted)). Mere carelessness or negligence is insufficient to establish deliberate indifference, an official must have acted with "a state of mind that is the equivalent of criminal recklessness." *Hurd*, 984 F.3d at 1084; *see also Rodriguez v. City of N.Y.*, No. 21-CV-8565, 2022 WL 3587598, at *18 (S.D.N.Y. Aug. 22, 2022) (explaining that "[i]f a period of prolonged detention results from discretionary decisions made in good faith, mistake, or processing or other administrative delays, . . . then there is no Eighth Amendment liability.") (quotation marks and citation omitted).

As to the first prong, Plaintiff has failed to establish a sufficiently serious deprivation because he has not been held beyond his maximum sentence. Plaintiff was released from Woodbourne on February 19, 2019, his conditional release date, and, as Plaintiff agreed to in his PRS Certificate, immediately transferred to the RTF. (*See* PRS & Parole Certificates 2.)[8]

---

[8] Where a "[prisoner] '[is] subject to the SARA residency requirement,' and his 'assignment to an RTF [is] based on a mandatory condition of his PRS,'" DOCCS can require that prisoner to reside at an RTF while he or she remains under its supervision. *Miller v. Smith*,

Plaintiff resided at the RTF until suitable housing was located, and he was released on March 1, 2022 to his current residence in Elmont, New York.  (*See* Residence Letter 1; Pl's Opp'n 5.) Because DOCCS could require Plaintiff to stay at the RTF until SARA-compliant housing was located and this period did not extend beyond Plaintiff's period of supervised release, Plaintiff has not suffered a sufficiently serious deprivation to state a claim under the Eighth Amendment. *See Miller*, 2021 WL 4222981, at *9 (finding plaintiff held in an RTF past his maximum sentence failed to show likelihood of success on the merits of his Eighth Amendment claim where he was required to reside at an RTF until suitable housing was located by the terms of his post-release supervision); *cf. People v. Superintendent, Fishkill Corr. Facility, N.Y.S. DOCCS*, 140 N.Y.S.3d 547, 549 (App. Div. 2021), *leave to appeal denied sub nom. People ex rel. Lucien v. Superintendent, Fishkill Corr. Facility*, 169 N.E.3d 1240 (2021) (denying Plaintiff's state habeas claim because he was not entitled to immediate release as he was required to reside at the RTF until SARA-compliant housing was located).

Plaintiff has also failed to establish that Defendants were deliberately indifferent as he has not alleged any specific conduct by either Defendant that would demonstrate that they acted with deliberate indifference to his incarceration.  *See* § II.B.1 *supra*; *see also Lozada v. Warden Downstate Corr. Facility*, No. 10-CV-8425, 2012 WL 2402069, at *3 (S.D.N.Y. June 26, 2012) (dismissing Eighth Amendment claim because the complaint "fail[ed] to allege [defendant's] direct involvement" in the prolonged incarceration); *cf. Beahm v. Burke*, 982 F. Supp. 2d 451, 461 (E.D. Pa. 2013) ("[I]n order to obtain relief for continued detention under § 1983, a prisoner

---

*et al.*, No. 21-CV-2949, 2021 WL 4222981, at *7 (E.D.N.Y. Sept. 16, 2021), *appeal dismissed* (Mar. 22, 2022), *reconsideration denied sub nom. Miller v. Smith*, No. 21-CV-2949, 2021 WL 5416624 (E.D.N.Y. Nov. 18, 2021) (citing *People ex rel. Johnson v. Superintendent Adirondack Corr. Facility*, 163 N.E.3d 1041, 1051–52 (N.Y. 2020)).

must show that a prison official was aware of his overstay and was deliberately indifferent in rectifying the problem.").

Therefore, Plaintiff's deliberate indifference claim is dismissed.

### 4.  Fourteenth Amendment Claims

#### a.  Due Process Claim

Plaintiff argues that his extended incarceration violated his rights to procedural due process under the Fourteenth Amendment because his fundamental interest in personal liberty was denied and he was not provided a fair process by which to challenge that denial.  (*See* Compl. ¶¶ 13–15, 18, 23–28, 30; Pl.'s Opp'n 4–7.)  Defendants argue that Plaintiff has failed to allege a protected liberty interest and, as such, is not entitled to any particular process.  (Defs' Prelim. Inj. Opp'n 14–15; Defs' Mem. 10–12; Defs' Reply 5.)[9]

"Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." *Filarsky v. Delia*, 566 U.S. 377, 383 (2012). The statute itself "creates no substantive rights," but merely provides a procedure for redress for the "deprivation[ ] of rights established elsewhere." *City of Okla. City v. Tuttle*, 471

---

[9] Given the deficiencies the Court identifies below with respect to Plaintiff's Fourteenth Amendment claim, it need not reach the question whether Plaintiff's Action is barred under the *Heck* doctrine, as Defendants argue.  (*See* Defs' Prelim. Inj. Mem. 11–12; Defs' Mem. 9–10; Defs' Reply 4–5.)  The *Heck* doctrine "is an issue that continues to cause some consternation in this Circuit," *Teichmann v. N.Y.*, 769 F.3d 821, 828 (2d Cir. 2014) (Calabresi, J., concurring), and "district courts within [this] [Circuit] have reached different conclusions as to whether a claimant may bring a [§] 1983 damages claim when the claimant is no longer in custody or otherwise cannot bring a habeas action," *Opperisano v. P.O. Jones*, 286 F. Supp. 3d 450, 458–59 (E.D.N.Y. 2018) (gathering cases).  Given the lingering "lack of clarity" on this question, *id.* at 458, Judge Calabresi has admonished district courts to resolve cases on non-*Heck* grounds whenever possible, *see Teichmann*, 769 F.3d at 829 (Calabresi, J., concurring) ("[M]any cases that have the potential to raise *Heck* questions can be disposed of based on well-settled principles upon which there is broad agreement, and when that is so, it is generally desirable for us and for district courts to decide them on these non[-]*Heck* grounds.").  Here, "where there [are] . . . obvious and overwhelming defense[s] to the § 1983 action," the Court "need [not] reach difficult *Heck* issues." *Id.*

U.S. 808, 816 (1985); *see also Louis v. Metro. Transit Auth.*, 145 F. Supp. 3d 215, 223 (E.D.N.Y. 2015) (same).  Thus, to state a claim pursuant to § 1983, a plaintiff must allege (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States."  *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (internal quotation marks omitted).

Pursuant to the Due Process Clause of the Fourteenth Amendment, "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV; *see also Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (holding that a procedural due process violation arises under the Fourteenth Amendment when a plaintiff has been deprived of a constitutionally protected interest in life, liberty, or property without due process of law).  The Due Process Clause protects "the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974) (citation omitted); *see also Zherka v. Ryan*, 52 F. Supp. 3d 571, 582 (S.D.N.Y. 2014) (same).  To state a procedural due process claim, a plaintiff "must first establish that he enjoyed a protected liberty interest."  *Arce v. Walker*, 139 F.3d 329, 333 (2d Cir. 1998).  If a plaintiff establishes such a protected interest, the next question is whether "the procedures followed by the State were constitutionally sufficient."  *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).  "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies."  *Wilkinson*, 545 U.S. at 221 (citation omitted).  "In order for a state prisoner to have an interest in parole that is protected by the Due Process Clause, he must have a legitimate expectancy of release that is grounded in the state's statutory scheme."  *Barna v. Travis*, 239 F.3d 169, 170 (2d Cir. 2001) (per curiam).  "Neither the mere possibility of

release, nor a statistical probability of release, gives rise to a legitimate expectancy of release on parole." *Id.* at 171 (citations omitted). While it is well settled that an inmate has no constitutionally protected interest in the possibility of parole, or other conditional release from prison, prior to its grant or the expiration of a valid sentence, *see Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979), it is an open question in the Second Circuit whether a prisoner has a liberty interest in his or her conditional release from prison, *see Doe v. Simon*, 221 F.3d 137, 139 (2d Cir. 2000) (refusing to "reach the thorny question of whether a liberty interest exist[s]" in conditional release); *see also Hayes v. Annucci*, No. 14-CV-8845, 2016 WL 1746109, at *3 (S.D.N.Y. Apr. 29, 2016) ("[T]he Second Circuit has declined to opine on whether New York recognizes a liberty interest in conditional release."); *Muhammad v. Evans,* No. 11-CV-2113, 2014 WL 4232496, at *7 (S.D.N.Y. Aug. 15, 2014) (same); *Ahlers v. Boruch*, No. 04-CV-1747, 2007 WL 2042794, at *5 (E.D.N.Y. July 16, 2007) (same).

As the Second Circuit did in *Doe*, the Court assumes that Plaintiff has adequately alleged facts to establish a liberty interest in his conditional release. *See* 221 F.3d at 139 ("[E]ven if [a liberty interest] did [exist,] [the plaintiff] received sufficient process to satisfy his constitutional rights."); *D'Angelo v. Annucci*, No. 16-CV-6459, 2017 WL 6514692, at *8–9 (S.D.N.Y. Dec. 19, 2017) (assuming without deciding that the plaintiff had adequately alleged a liberty interest in his conditional release from prison). "It is undisputed that under New York law the Board of Parole is entitled to impose conditions on the conditional release of an inmate such as [Plaintiff]." *Doe*, 221 F.3d at 139. Under these circumstances, the Second Circuit has held the "minimum" process due a prisoner with an approved residence condition for his conditional release is "notice that he would not be released without an approved residence, an explanation of why this special

18

condition was being imposed, and an opportunity to dispute the grounds for application of the special condition." *Id.* at 140.

Plaintiff has not alleged that he did not receive notice or an explanation concerning the conditions of his post-release supervision, nor has he argued that procedures to dispute the conditions he objects to are unavailable. (*See generally* Compl.; FAP.) "Plaintiff's claim, then, is a challenge to the mere fact of his confinement beyond his conditional release date, and is devoid of any allegations regarding specific deficiencies in the process he was afforded." *D'Angelo*, 2020 WL 777907, at *9 (dismissing plaintiff's procedural due process claim where the plaintiff "[did] not allege that he received insufficient notice that an approved, SARA compliant residence would be required for his release"); *see also Velazquez v. Gerbing*, No. 18-CV-8800, 2020 WL 777907, at *9–10 (S.D.N.Y. Feb. 18, 2020) (holding that the plaintiff failed to state a procedural due process claim where he was aware that his release was conditioned on the parole board's approval of SARA-compliant housing and had been given a meaningful opportunity to advocate for his proposed residence). Therefore, Defendants are entitled to dismissal of Plaintiff's due process claim.

### b. Equal Protection Claim

Plaintiff has alleged that Defendants have imposed an "unwritten policy" of allowing sex offenders on supervised release to be released only "to [their] county of conviction or former residence." (*See* FAP ¶ 6.) Plaintiff claims that "Defendants have no legitimate interest [that is] served by a policy under which persons from some counties[] may be release[d] [while] unlucky [persons] from other counties [have] to remain in prison for several years thereafter." (*Id.* ¶ 7.) Defendants respond that New York law directs public officials responsible for releasing sex offenders to make reasonable judgments as to where sex offenders should be released based on the restrictions that have been placed on their residence and the potential threat created by

19

housing too many sex offenders in a single community.  (*See* Defs' Prelim. Inj. Mem. 13 (citing

9 New York Code of Rules & Regulations 8002).)  Construed liberally, Plaintiff's claim raises a

Fourteenth Amendment equal protection challenge to the DOCCS policy because he was

required to reside at the RTF longer than other sex offenders who committed offenses in or

resided in other counties.

      The Equal Protection Clause "is essentially a direction that all persons similarly situated

should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *see*

*also Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (same). "[T]o

assert an equal protection claim, a plaintiff must plead (1) adverse treatment 'compared with

similarly situated individuals,' and (2) 'that such selective treatment was based on impermissible

considerations such as race, religion, intent to inhibit or punish the exercise of constitutional

rights, or malicious or bad faith intent to injure a person.'"  *Marom v. Town of Greenburgh*, No.

13-CV-4733, 2015 WL 783378, at *9 (S.D.N.Y. Feb. 23, 2015) (quoting *Miner v. Clinton Cnty.*,

541 F.3d 464, 474 (2d Cir. 2008)); *see also Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005)

(holding that a plaintiff must allege "that he was treated differently than others similarly situated

as a result of intentional or purposeful discrimination" (citation omitted)).

      "If the plaintiff is not a member of a protected class, a 'class of one' equal protection

claim requires that (1) he was treated differently from others similarly situated in all relevant

respects, (2) the defendant had no rational basis for the different treatment, and (3) the different

treatment resulted from a non-discretionary state action."  *Marom*, 2015 WL 783378, at *9

(citing *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 604 (2008)); *see also Ruston v. Town Bd.*

*for Town of Skaneateles*, 610 F.3d 55, 59–60 (2d Cir. 2010) ("Class-of-one plaintiffs must show

an extremely high degree of similarity between themselves and the persons to whom they

compare themselves.  Accordingly, to succeed on a class-of-one claim, a plaintiff must establish that (i) no rational person would regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." (quotation marks and citation omitted)).

It is well settled that "prisoners either in the aggregate or specified by offense are not a suspect class." *Graziano v. Pataki*, 689 F.3d 110, 117 (2d Cir. 2012) (quotation marks omitted); *see also Benjamin v. Jacobson*, 172 F.3d 144, 165 (2d Cir. 1999) ("[P]risoners are not a suspect class.").  Plaintiff may still proceed under a class of one theory but must demonstrate, as a threshold matter, the existence of a person who is "*prima facie* identical" to him and who was treated differently.  *Hu v. City of N.Y.*, 927 F.3d 81, 92 (2d Cir. 2019) (internal quotation marks and citation omitted).  Plaintiff has not made such a showing here because he has failed to allege any specific comparator, instead alleging in general terms that the DOCCS policy has a discriminatory effect.  (*See* FAP ¶¶ 6–7.)  *See also Barzee v. Tyler*, No. 21-CV-902, 2022 WL 1406606, at *9 (N.D.N.Y. May 3, 2022), *report and recommendation adopted*, No. 21-CV-0902, 2022 WL 2079084 (N.D.N.Y. June 9, 2022) ("Plaintiff's purported equal protection claim is inadequate because he has failed identify any *prima facie* identical comparators.") (quotation marks and citation omitted); *MacPherson v. Town of Southampton*, 738 F. Supp. 2d 353, 371 (E.D.N.Y. 2010) (dismissing equal protection claim where plaintiff failed to "identify any comparators or similarly situated entities").

Moreover, even if Plaintiff had alleged a comparator, his claim would still fail because any disparate treatment would be related to DOCCS' legitimate interest in sex offenders being

released to residences where they are legally authorized to live while also preventing high concentrations of sex offenders in particular areas of the state.  *See* N.Y. Comp. Codes R. & Regs. tit. 9, § 8002.7(d)(2), (5) (2022) (explaining that "[a]ll reasonable efforts should be made to avoid an ill-advised concentration of sex offenders in certain neighborhoods and localities . . . [and that] [a]ll public officials who are responsible for finding or approving housing for sex offenders should recognize that an over-concentration of sex offenders may create risks and burdens on the surrounding community, and that their responsibility is to make judgments that are reasonable under the circumstances"); *see also Green v. Semple*, No. 19-CV-410, 2019 WL 2016779, at *4 (D. Conn. May 7, 2019), *aff'd*, 811 F. App'x 706 (2d Cir. 2020), *and aff'd*, 811 F. App'x 706 (2d Cir. 2020) (denying class of one claim where government was "legally obligated to distinguish between inmates").

As such, Plaintiff's equal protection claim is dismissed.

### 5.  Qualified Immunity

Defendants argue that the doctrine of qualified immunity independently bars Plaintiff's Eighth and Fourteenth Amendment claims.  (*See* Defs' Mem. at 14–16.)

The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation and quotation marks omitted).  This protection attaches only "if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law."  *Coggins v. Buonora*, 776 F.3d 108, 114 (2d Cir. 2015) (citation and quotation marks omitted).  In this context, a court "is guided by two questions: first, whether the facts show that the defendants' conduct violated [the] plaintiffs' constitutional rights, and second, whether the right was clearly established at the time

of the defendants' actions." *Golodner v. Berliner*, 770 F.3d 196, 201 (2d Cir. 2014) (citation, quotation marks, and brackets omitted).

The Court need not reach the second prong of this inquiry because, as discussed above, Plaintiff has not plausibly pled that Defendants violated his constitutional rights. *See Posr v. City of N.Y.*, No. 10-CV-2551, 2013 WL 2419142, at *10 n.8 (S.D.N.Y. June 4, 2013) ("Because [the defendant] did not violate [the] [p]laintiff's [constitutional] rights, there is no need to consider if [the defendant] is entitled to qualified immunity."), *aff'd sub nom. Posr v. Ueberbacher*, 569 F. App'x 32 (2d Cir. 2014) (summary order). But even assuming Plaintiff's Eighth or Fourteenth Amendment rights were violated by his confinement beyond his conditional release date, qualified immunity would still shield Defendants from suit. As noted above, it remains an open question in the Second Circuit whether there is a constitutional liberty interest in conditional release. *See Doe*, 221 F.3d at 139; *Hayes*, 2016 WL 1746109, at *3; *Muhammad*, 2014 WL 4232496, at *7; *Ahlers*, 2007 WL 2042794, at *5. It cannot be said, therefore, that a plaintiff's right to release upon the occurrence of his conditional release date was clearly established at the time of the alleged denial. Accordingly, Defendants are entitled to dismissal of Plaintiff's Eighth and Fourteenth Amendment claims. *See D'Angelo*, 2017 WL 6514692, at *9 (dismissing procedural due process claim based on qualified immunity where the plaintiff alleged that the defendants detained him past his conditional release date); *McKay v. City of N.Y.*, 32 F. Supp. 3d 499, 510 (S.D.N.Y. 2014) (granting qualified immunity when the case law "provide[s] a basis for reasonable officers to disagree" as to constitutional requirement); *Estrella v. Menifee*, 275 F. Supp. 2d 452, 460 (S.D.N.Y. 2003) (granting qualified immunity "given the absence of a binding [Second Circuit] decree invalidating" the officials' actions).

### 6.  Injunctive Relief

Plaintiff has made several requests for injunctive relief.  Specifically, Plaintiff requests "a preliminary injunction . . . absolving [McGrath] and [Royce's] travel-ban restriction[] and delivery of Plaintiff to Mr. Doug ClarK [sic]. . . "  (FAP ¶ 7), and "a preliminary injunction directing [D]efendants to refrain from retaliatory acts [for] pursuing this cause of action," (Compl. at 12).  Plaintiff also requests "a permanent injunction directing [D]efendants to provide Plaintiff documentary proof asserted in this action and . . . that reasonably will lead to discoverable admissible evidence in preparation for trial by jury."  (Compl. at 12.)  Defendants argue that Plaintiff has failed to make the necessary showing to be granted a preliminary injunction, (*see* Defs' Prelim. Inj. Mem.), but have not addressed Plaintiff's request for a permanent injunction, (*see generally* Defs' Prelim. Inj. Mem.; Defs' Mem.; Defs' Reply).

"To obtain prospective injunctive relief, whether preliminary or permanent, a plaintiff 'cannot rely on past injury[,] but must show a likelihood that she will be injured in the future." *Johnson v. Padin*, No. 20-CV-637, 2020 WL 4818363, at *6 (D. Conn. Aug. 16, 2020) (ellipses omitted) (quoting *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998)); *Kelly v. N.Y. State Civ. Serv. Comm'n*, No. 14-CV-716, 2015 WL 861744, at *4 n.4 (S.D.N.Y. Jan. 26, 2015) (same); *see also Pungitore v. Barbera*, 506 F. App'x 40, 41 (2d Cir. 2012) (summary order) ("[W]hen seeking prospective injunctive relief, the plaintiff must prove the likelihood of *future* or *continuing* harm."); *Krull v. Oey*, No. 19-CV-142, 2019 WL 1207963, at *10 (N.D.N.Y. Mar. 14, 2019) (same).  Additionally, "[t]o prevail on a motion for preliminary injunctive relief, the moving party must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint." *Candelaria v. Baker*, No. 00-CV-0912, 2006 WL 618576, at *3 (W.D.N.Y. Mar. 10, 2006) (citing *McKinnon v. Tresman*, No. 02-CV-2305, 2004 WL 78091, at *1 (D. Conn. 2004)).

24

Here, although Plaintiff seeks an injunction "absolving [McGrath] and [Royce's] travel-ban restriction[] and delivery of Plaintiff to Mr. Doug ClarK [sic]. . . " (FAP ¶ 7), he fails to allege "a likelihood of either future harm or continuing harm," *Krull*, 2019 WL 1207963, at *10. Because Plaintiff was released from the RTF in March 2022 and has since taken up residence in an apartment in Elmore, NY, (*see* Residence Letter 1), the harms he alleges have been eliminated by virtue of his release, *cf. D'Angelo*, 2017 WL 6514692, at *11 (concluding that because the plaintiff had been released from prison since the filing of his complaint, his "request for injunctive relief in the form of his immediate release" should be dismissed as moot); *Pugh v. Goord*, 571 F. Supp. 2d 477, 489 (S.D.N.Y. 2008) (explaining that "[w]here a prisoner has been released from prison, his [or her] claims for injunctive relief based on the conditions of his [or her] incarceration must be dismissed as moot"). Though it is possible Plaintiff may be subject to other potential harm from having to comply with SARA provisions—such as stigma or difficulty locating housing in the future—no such harm is alleged in his pleadings. (*See generally* Compl.; FAP.) Because Plaintiff has solely "rel[ied] on past injury," without "show[ing] a likelihood that he . . . will be injured in the future," the Court may not grant his claim for prospective injunctive relief. *DeShawn*, 156 F.3d at 344; *see also Johnson*, 2020 WL 4818363, at *6 (dismissing claim for injunctive relief where the plaintiff failed to allege future harm); *Patterson v. Patterson*, No. 16-CV-844, 2019 WL 1284346, at *6 (W.D.N.Y. Mar. 20, 2019) ("Plaintiff fails to allege an ongoing violation or threat of future enforcement of federal law that would entitle him to injunctive relief."); *Caruso v. Zugibe*, No. 14-CV-9185, 2015 WL 5459862, at *6 (S.D.N.Y. June 22, 2015) (denying claim for prospective injunctive relief because, "even if [the] defendants [had] violated [the] plaintiff's rights in the past as she allege[d]," the plaintiff "ha[d] not

plausibly alleged a sufficient likelihood that she [would] again be wronged in a similar way" (citation, quotation marks, and brackets omitted)).

Plaintiff's request for "a preliminary injunction directing [D]efendants to refrain from retaliatory acts [for] pursuing this cause of action," (Compl. at 12), must also be denied because Plaintiff's request is entirely unrelated to the allegations in his Complaint that Defendants are holding him unlawfully at the RTF.  *See Jackson v. Stanford*, No. 16-CV-9702, 2019 WL 13166075, at *3 (S.D.N.Y. Jan. 7, 2019) (dismissing request for preliminary injunction to halt plaintiff's parole revocation hearing because it was unrelated to "the underlying suit . . . which . . . alleged misconduct by DOCCS in continuing [plaintiff's] prior incarceration past his release date") (citations omitted); *see also Mitchell v. N.Y. State Dep't of Corr. Servs.*, No. 06-CV-6278, 2011 WL 5326054, at *3 (W.D.N.Y. Nov. 3, 2011) (denying plaintiff's request for injunction because the "facts underlying the request for injunctive relief are essentially unrelated to the underlying facts of the claims in this action"); *Lewis v. Johnston,* No. 08-CV-0482, 2010 WL 1268024, at *3 (N.D.N.Y. Apr. 1, 2010) (denying motion for injunctive relief based upon actions taken by staff at Great Meadow Correctional Facility in 2010, where the complaint alleged wrongdoing that occurred at Franklin and Upstate Correctional Facilities in 2006 and 2007).

Plaintiff also requests "a permanent injunction directing [D]efendants to provide Plaintiff documentary proof asserted in this action and . . . that reasonably will lead to discoverable admissible evidence in preparation for trial by jury." (Compl. at 12.)  However, Plaintiff fails to allege a future harm that would make prospective relief appropriate.  *See, e.g., Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020) ("*The prospective-orientation of the analysis is critical*: to maintain an action for injunctive relief, a plaintiff 'cannot rely on past injury . . . but must show a likelihood that he ... will be injured in the future.'") (emphasis added) (quoting *Deshawn*

*E.*, 156 F.3d at 344).  Plaintiff has not demonstrated a future harm here because, assuming this Action moves forward into discovery, he will have the right under the Federal Rules of Civil Procedure to request documents from Defendants concerning all relevant aspects of their alleged conduct.  *See* Fed. R. Civ. P. 26, 34.

Plaintiff's requests for injunctive relief are denied.

### 7. Futility of Amendment

Plaintiff has requested to file an amended complaint.  (*See* Pl's Opp'n at 3 n.1.) Defendants argue that the Court should dismiss Plaintiff's claims with prejudice because any attempt to amend would be futile as Plaintiff's claims as pled are without merit. and he has not identified any potentially viable claims he has against the unserved Defendants.  (Defs' Reply 7). However, because this is the first adjudication of Plaintiff's claims on the merits, the dismissal of his claims is without prejudice. *See Terry v. Incorporated Village of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016) (explaining that "district judges should, as a general matter, liberally permit pro se litigants to amend their pleadings" unless "amendment would be futile").

### III.  Conclusion

Defendant's Motion is granted as to Plaintiff's Eighth and Fourteenth Amendment claims and his requests for injunctive relief.  Because Plaintiff has failed to allege the personal involvement of any served Defendants, his First Amendment claim is also dismissed without prejudice.

Should Plaintiff choose to file an amended complaint to remedy the infirmities identified regarding those claims dismissed without prejudice, he must do so within 30 days of this Opinion, addressing the deficiencies identified herein.  The amended complaint will replace, not supplement, the Complaint currently before the Court.  It therefore must contain all of the claims

and factual allegations Plaintiff wishes the Court to consider.  If Plaintiff fails to abide by the 30-day deadline, the claims dismissed without prejudice may be dismissed with prejudice.

Defendants Royce and McGrath have yet to be served or appear in this Action, and the time for Plaintiff to serve them has passed.  (*See* Dkt.)  Plaintiff has requested that the Court issue a *Valentin* Order to identify the addresses of three additional unserved individuals that Plaintiff seeks to sue in his potential amended complaint—the Deputy Commissioner of DOCCS, Parole Officer Shawn Oliver, and Parole Officer L. Johnson Richardson—so that service may be effected.  (Pl's Opp'n 7).  As the Court has an obligation "to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training," *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (italics omitted), and because the Second Circuit has a "clearly expressed preference that litigation disputes be resolved on the merits," *Mejia v. Castle Hotel, Inc.*, 164 F.R.D. 343, 346 (S.D.N.Y. 1996); *see also Cody v. Mello*, 59 F.3d 13, 15 (2d Cir. 1995) (same), the Court will provide additional time for Plaintiff to effect service on the unserved Defendants.  Accordingly, within 14 days of the date of this Order, the New York State Office of the Attorney General is directed to file a letter with the Court, providing addresses at which the Deputy Commissioner of DOCCS, Oliver, and Richardson can be served.  The Court will issue an Order of Service upon receipt.

The Clerk of Court is respectfully directed to terminate the pending Motion.  (Dkt. No. 29.)

SO ORDERED.

Dated:   March 27, 2023
           White Plains, New York

_____
KENNETH M. KARAS
United States District Judge